UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH WAYNE GRAY, III,<br><br>Plaintiff,<br><br>v.<br><br>HUNTER GREENWOOD, et al.,<br><br>Defendants. | No. 2:24-cv-1401 DC AC PS<br><br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is proceeding in this matter pro se and pre-trial proceedings are accordingly referred to the undersigned pursuant to Local Rule 302(c)(21). Defendants filed a motion to dismiss this case on May 20, 2025. ECF No. 15. Following an extension of time, plaintiff moved for leave to amend in response to the motion to dismiss. ECF No. 23. The court granted plaintiff leave to amend and denied the motion to dismiss as moot. ECF No. 25. Plaintiff filed his First Amended Complaint ("FAC") on August 4, 2025. ECF No. 27. Defendants filed a motion to dismiss on August 19, 2025. ECF No. 30. Plaintiff opposed the motion (ECF No. 32), defendants replied (ECF No. 33), and plaintiff filed an unauthorized surreply (ECF No. 34). For the reasons set forth below the undersigned recommends defendants' motion to dismiss be GRANTED in part and DENIED in part.

**I. Background**

A. <u>The First Amended Complaint</u>

On May 20, 2022, plaintiff came home around 6:00 p.m. to find his apartment surrounded

1

1  by police. ECF No. 27 at 1. Plaintiff asked an officer what was going on but received no reply.
2  Id. Shortly after, another officer asked plaintiff if the apartment was his, and after confirming that
3  it was, plaintiff was told that someone tried to enter his apartment with a gun. Id. at 1-2.
4  Defendant Sergeant Greenwood asked plaintiff if anyone was supposed to be inside, to which
5  plaintiff replied no, but explained that this brother has a key and sometimes comes and goes. Id.
6  at 2. Seargent Greenwood asked plaintiff to call his brother and find out if he was inside, stating
7  that the officers needed to do a welfare check. Id. Plaintiff called his brother and sent several
8  texts but received "little response." Id. Another officer approached plaintiff and asked for his
9  identification, which plaintiff provided. Id. Plaintiff continued to stand about 100 feet from his
10 apartment door. Id.

11       Roughly two hours from the time plaintiff arrived, Seargeant Greenwood asked for
12 plaintiff's permission to enter the apartment, telling plaintiff the officers wanted to force entry
13 because the people inside would not come out, and they needed to do a welfare check. Id.
14 Plaintiff was concerned that during a forced entry his brother might be shot and killed, so he
15 refused to grant permission. Id. Seargeant Greenwood told plaintiff that they had to enter and
16 could get a warrant in five minutes. Id. Plaintiff told Seargeant Greenwood to get a warrant, and
17 if he did, plaintiff would give the officers his key so that they didn't break down the door. Id.

18       Plaintiff returned to his original standing point opposite the apartment road and started
19 video and audio recording with his cell phone. Id. Several minutes later Seargeant Greenwood
20 told plaintiff they were about to force entry and stated that because they didn't know if plaintiff
21 was communicating with someone inside the apartment, he was going to need to sit in the back of
22 the patrol car for his own safety. Id. Plaintiff asked the officer if he was being detained, and
23 Seargent Greenwood replied "no." Plaintiff stated he was not going to sit in the car if he was not
24 being detained, and Seargent Greenwood told him that it was "not optional." Id.

25       Plaintiff began to walk away and Seargent Greenwood grabbed his wrist and twisted it
26 behind plaintiff's back aggressively, causing pain in plaintiff's elbow. Officer Dailey came to
27 assist and roughly pushed plaintiff into a nearby car while Seargent Greenwood continued to hold
28 plaintiff's wrist. Id. Seargent Greenwood placed handcuffs on plaintiff and clasped them

extremely tightly. Id. at 3. The officers then searched plaintiff and took all items that he had on him, including his wallet, car keys, and cellphone. Id. The officers put plaintiff in the car, rolled up the windows and turned the heater on full blast. Id. After roughly 30-45 minutes, plaintiff's brother was placed in the police car with him. Plaintiff believes based on information obtained from his brother that the police entered his apartment. Id. After another 30 minutes, the officers released and uncuffed both plaintiff and his brother. Id. The police returned plaintiff's items and plaintiff went inside his apartment. Id. Plaintiff was told by Seargent Greenwood that Lieutenant Lopez had ordered him to detain plaintiff. Id.

Plaintiff asserts his First Amendment rights were violated when the officers retaliated against him by detaining him only after he began filming. Id. at 4. Plaintiff alleges his Fourth Amendment rights were violated when he was unlawfully detained without reasonable suspicion or probable cause, when he was falsely arrested, when officers entered his home without permission, a warrant, or exigent circumstances, when he was illegally searched, and when the officers used excessive force by twisting his wrist and elbow, tightly cuffing him, and leaving him in a sealed car with the heater on. Id. Plaintiff seeks $200,000 in compensatory damages and one million dollars in punitive damages. Id.

### B. Motion to Dismiss

Defendants move to partially dismiss this case on several grounds. First, defendants assert the First Amendment claim should be dismissed because defendants are entitled to qualified immunity. ECF No. 30-1 at 4. Second, defendants assert that plaintiff fails to state a claim of unlawful detention because defendants had probable cause to detain plaintiff pursuant to Penal Code § 148. Id. at 7. Third, defendants argue that defendant Lopez should be dismissed from the unlawful personal search claim and the excessive force claim because there are no relevant facts alleged against him. Id. at 6.

## II. Analysis

### A. Legal Standards Governing Motions to Dismiss

"The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal sufficiency of the complaint." N. Star Int'l v. Ariz. Corp. Comm'n, 720 F.2d 578, 581 (9th Cir.

3

1    1983). "Dismissal can be based on the lack of a cognizable legal theory or the absence of

2    sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't., 901

3    F.2d 696, 699 (9th Cir. 1990).

4    In order to survive dismissal for failure to state a claim, a complaint must contain more

5    than a "formulaic recitation of the elements of a cause of action;" it must contain factual

6    allegations sufficient to "raise a right to relief above the speculative level." Bell Atlantic Corp. v.

7    Twombly, 550 U.S. 544, 555 (2007). It is insufficient for the pleading to contain a statement of

8    facts that "merely creates a suspicion" that the pleader might have a legally cognizable right of

9    action. Id. (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-35

10   (3d ed. 2004)). Rather, the complaint "must contain sufficient factual matter, accepted as true, to

11   'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)

12   (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads

13   factual content that allows the court to draw the reasonable inference that the defendant is liable

14   for the misconduct alleged." Id.

15   In reviewing a complaint under this standard, the court "must accept as true all of the

16   factual allegations contained in the complaint," construe those allegations in the light most

17   favorable to the plaintiff and resolve all doubts in the plaintiff's favor. See Erickson v. Pardus,

18   551 U.S. 89, 94 (2007); Von Saher v. Norton Simon Museum of Art at Pasadena, 592 F.3d 954,

19   960 (9th Cir. 2010), cert. denied, 564 U.S. 1037 (2011); Hebbe v. Pliler, 627 F.3d 338, 340 (9th

20   Cir. 2010). However, the court need not accept as true legal conclusions cast in the form of

21   factual allegations, or allegations that contradict matters properly subject to judicial notice. See

22   Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981); Sprewell v. Golden State

23   Warriors, 266 F.3d 979, 988 (9th Cir.), as amended, 275 F.3d 1187 (2001). t

24   Pro se pleadings are held to a less stringent standard than those drafted by lawyers.

25   Haines v. Kerner, 404 U.S. 519, 520 (1972). Pro se complaints are construed liberally and may

26   only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support

27   of his claim which would entitle him to relief. Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir.

28   2014). The court's liberal interpretation of a pro se complaint, however, may not supply essential

elements of the claim that were not pled.  Ivey v. Bd. of Regents of Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982); see also Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).  A pro se litigant is entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987).

### B.  The Officers are Not Entitled to Qualified Immunity

Defendants assert they are entitled to qualified immunity with respect to plaintiff's first amendment retaliation claim because there is no clearly established law that holds it is unconstitutional to detain and prevent plaintiff from videotaping when the conduct was performed in the context of officer safety and/or during entry into an apartment that contained a possibly armed person.  ECF No. 30-1 at 5.  The doctrine of qualified immunity protects government officials from liability insofar as their conduct does not violate clearly established rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.  Id.  Ideally, qualified immunity is determined at the earliest possible stage in litigation to avoid unnecessary burden and expense.  Hunter v. Bryant, 502 U.S. 224, 227 (1991).

In Saucier v. Katz, 533 U.S. 194 (2001) (overruled in part by Pearson, 555 U.S. at 223), the Supreme Court set forth a two-part inquiry for determining whether qualified immunity applies.  First, a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  If so, the court must ask whether the constitutional right was "clearly established."  Id.  This second inquiry must be undertaken in the specific context of the case.  Id.  In Pearson v. Callahan, the Supreme Court removed any requirement that the Saucier test be applied in a rigid order, holding "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should

////

be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

"The plaintiff bears the burden of proof that the right allegedly violated was clearly established." Tarabochia v. Adkins, 766 F.3d 1115, 1125 (9th Cir. 2014) (internal quotation marks omitted). "To meet this standard the very action in question need not have previously been held unlawful." Id. (internal quotation marks omitted). The court must determine "whether a reasonable officer would have had fair notice that the action was unlawful[.]" Tarabochia, 766 F.3d at 1125 (internal quotation marks and brackets omitted). At its base, "[t]he qualified immunity doctrine rests on a balance between, on the one hand, society's interest in promoting public officials' observance of citizens' constitutional rights and, on the other, society's interest in assuring that public officials carry out their duties and thereby advance the public good." Beier v. City of Lewiston, 354 F.3d 1058, 1071 (9th Cir. 2004). When defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless the court can determine, based on the complaint itself, that qualified immunity necessarily applies. See O'Brien v. Welty, 818 F.3d 920, 936 (9th Cir. 2016).

Defendants seek dismissal on qualified immunity grounds only with respect to plaintiff's First Amendment retaliation claim. The First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech. "If an official takes adverse action against someone based on that forbidden motive, and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences, the injured person may generally seek relief by bringing a First Amendment claim." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019) (internal citations omitted). To prevail on such a claim, a plaintiff must show that the speech was the "but for cause" of the adverse action. Id.

Federal law has long been clear that there is a First Amendment Right to photograph and record "matters of public interest," including interactions with police officers in public spaces. Fordyce v. City of Seattle, 55 F.3d 436, 439 (9th Cir. 1995); Askins v. U.S. Dep't of Homeland Sec., 899 F.3d 1035, 1044 (9th Cir. 2018); see also, Reed v. Lieurance, 863 F.3d 1196, 1211 (9th Cir. 2017) (referencing "the First Amendment-protected activity of observing a government

operation" and citing Fordyce as "recognizing a 'First Amendment right to film matters of public interest' – in that case, police actions during a public demonstration" (quoting Fordyce, 55 F.3d at 439)).

Defendants attempt to distinguish Fordyce on the grounds that Fordyce "did not involve a situation where the Plaintiff was present at an active crime scene investigation, and where the Plaintiff was communicating with a potential armed suspect where the public was in danger." ECF No. 33 at 3. While defendants are correct that the circumstances in this case are not identical to Fordyce, they overstate the differences. Pursuant to the FAC, plaintiff was not interfering with or even meaningfully close to an active crime scene. Plaintiff alleges that at the time he was retaliated against he had moved away from apartment to the other side of the street and was recording, which is inconsistent with an allegation that he was potentially communicating with anyone who may have been inside the house. ECF No. 27 at 2. Plaintiff informed officers that he was filming and stated that he intended to continue filming if placed in the car; it should have been clear to the officers that he was not communicating with anyone, and he was standing away from the door, not interfering with the officers' investigation. Id. Given the facts alleged, defendants knew or should have known they were interfering with a constitutionally protected right, and qualified immunity is not warranted at the pleading stage. The motion to dismiss should be denied on this point.

### C. Defendants Did Not Have Reasonable Suspicion to Detain Plaintiff

Defendants argue that plaintiff's Fourth Amendment unlawful detention claim should be dismissed because they had reasonable suspicion to detain plaintiff under Penal Code § 148, which provides that a person who "willfully resists, delays, or obstructs any public officer, peace officer, or emergency medical technician" in discharging their duties is subject to imprisonment and a fine. ECF No. 30-1 at 7. With respect to both persons and property, "[t]he Fourth Amendment proscribes only 'unreasonable' searches and seizures." Franklin v. Foxworth, 31 F.3d 873, 875 (9th Cir. 1994). Whether a seizure is unreasonable is measured by an objective test based on all the circumstances of a given situation: "a detention may be unreasonable in a

////

7

1  particular instance either because the detention itself is improper or because it is carried out in an
2  unreasonable manner." Id. at 876.

3  Objective reasonableness in the Fourth Amendment context is evaluated from the
4  perspective of a "reasonable officer on the scene," considering all the facts and circumstances
5  confronting law enforcement. Torres v. City of Madera, 648 F.3d 1119, 1124 (9th Cir. 2011). In
6  all detention scenarios, the court must weigh the need for police action against the nature and
7  degree of inconvenience and intrusion that the detention entails. See Terry v. Ohio, 392 U.S. 1,
8  21 (1968); see also Brown v. Texas, 443 U.S. 47, 51 (1979) (in deciding whether a detention is
9  reasonable, courts look to "the gravity of the public concerns served by the seizure, the degree to
10 which the seizure advances the public interest, and the severity of the interference with individual
11 liberty."). Circumstances under which it may be objectively reasonable to detain a person who is
12 not suspected of having committed a crime include "emergency situations" in which local law
13 enforcement officers are acting to keep the peace. See Maxwell v. County of San Diego, 708
14 F.3d 1075, 1084 (9th Cir. 2013).

15 The facts alleged do not support defendants' argument. Plaintiff alleges that at the time he
16 was detained he was a hundred feet away from the scene of the investigation, and he offered to
17 walk further away. ECF No. 27 at 3. When he attempted to walk further away, he was detained.
18 Id. The only reason plaintiff was interacting with police at the time was because the police
19 approached him. Id. He was not communicating with anyone inside the apartment, he was
20 recording, and he informed the defendant officers that he was recording. Id. Prior to recording,
21 when he did attempt to contact his brother, he did so only at the request of the police. Id.
22 Defendants' argument that they had probable cause to detain plaintiff is not supported by the facts
23 alleged. The motion to dismiss should accordingly be denied on this point.

24     D. The Unlawful Detention and Excessive Force Claims Against Lieutenant Lopez Must
25        be Dismissed

26 Defendants correctly contend that because the operative FAC does not contain any
27 allegations directly implicating defendant Lopez in the allegedly unlawful search and use of force
28 against plaintiff, these claims must be dismissed as against Lopez. Liability under §1983 arises

8

only upon a showing of personal participation by the defendant. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, a plaintiff cannot hold an officer liable "because of his membership in a group without a showing of individual participation in the unlawful conduct." Jones v. Williams, 297 F.3d 930, 935 (9th Cir.2002). Instead, a plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." Jones, 297 F.3d at 935. Here, the FAC does not include any allegations that Lieutenant Lopez was directly involved with plaintiff's physical detention: there is no allegation that he participated in any search or use of force. Plaintiff's single allegation that he was told by another officer after the incidents concluded that Lopez ordered the arrest is insufficient to establish Lopez's "integral participation" in the actual search or use of force. Accordingly, the unlawful search and excessive force claims against Lopez must be dismissed.

### III.   Pro Se Plaintiff's Summary

It is being recommended that defendants' motion to be dismiss be denied except as to the excessive force and unlawful search claims against Lieutenant Lopez. The facts you allege do not show that Lopez was personally involved in the search or use of force against you, and so you cannot bring these claims against him. The rest of your claims will move forward. You may object to these recommendations within 21 days if you disagree with them. The district judge will make the final decision.

### IV. Conclusion

Accordingly, the undersigned recommends that defendants' motion to dismiss (ECF No. 30) be GRANTED with respect to the excessive force and unlawful search claims against Lieutenant Lopez only and DENIED in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Id.; see also Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to

appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

DATED: October 24, 2025

/s/ Allison Claire
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE